IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| PIER VIEW CONDOMINIUM ASSOCIATION, INC., | ) ) ) | Civil Action No. 2:18-cv-00022-RMG |
| Plaintiff, | ) ) | |
| vs. | ) ) | **AMENDED COMPLAINT** (Jury Trial Demanded) |
| Johns Manville, Inc., | ) ) | |
| Defendant. | ) ) | |

The Plaintiff, Pier View Condominium Association, Inc., complaining of the Defendant named herein, would respectfully allege and show the Court as follows:

**PARTIES AND JURISDICTIONAL STATEMENT**

1. Plaintiff files this Amended Complaint pursuant to the Court's Scheduling Order [ECF No. 7] and Rule 15 of the Federal Rules of Civil Procedure which allows Plaintiff to freely amend its Complaint with the written consent of the opposing party. (*See* Exhibit A, Apr. 3, 2018 Email from counsel for Johns Manville).

2. Plaintiff Pier View Condominium Association, Inc. (hereinafter the "Association") is a non-profit corporation organized and existing under the laws of the State of South Carolina.

3. Pier View consists of one hundred and thirty-six (136) condominiums in three (3) buildings (Buildings 125, 135, and 145) and related common elements, which are located on Daniel Island in Berkeley County, South Carolina.

4. The Pier View Horizontal Property Regime ("Pier View") is a Horizontal Property Regime which exists by virtue of a Master Deed dated September 17, 2007 and recorded on September 24, 2007 in the RMC Office of Berkley County, SC in Book R6876, Page 1.

5. The Association is the homeowner's association for the Pier View Horizontal Property Regime.

6. By virtue of the Master Deed, recorded on September 24, 2007, the developer, 125 Pier View, L.P., submitted the Property to the condominium form of ownership. As of that date, the Association, on behalf of the undivided interests of its members, owned Pier View.

7. By virtue of governing documents and the South Carolina Horizontal Property Regime Act, S.C. Code § 27-31-10, *et. seq.*, the Association is charged with certain duties, powers, rights and authority in connection with Pier View.

8. By virtue of the Master Deed and/or Bylaws, the Association is charged with, *inter alia*, the management and administration of Pier View, the investigation, maintenance and repair of Pier View's Common Elements and Areas of Responsibility, and has the right and authority to bring this action on behalf of the Association and its members.

9. By virtue of their condominium ownership, Pier View homeowners are members of the Association.

10. The Pier View homeowners have assigned their interests and claims related to this suit to the Association.

11. Defendant Johns Manville, Inc. ("Johns Manville" or "Defendant") is a corporation organized and existing under the laws of the State of Delaware. At all times relevant to this action, Defendant Johns Manville manufactured and supplied roofing materials installed at Pier View, provided a written warranty on the roof, inspected the roof for proper installation and for repair claims, and performed repairs or caused repairs to be performed on the roof.

12. This Court has jurisdiction over the subject matter and parties hereto pursuant to 28 U.S.C. § 1332; 28 U.S.C. § 2201 *et seq.*; and S.C. Code § 36-2-803.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

14. This matter arises out of the construction and sale of Pier View.

*The Warranty*

15. Defendant Johns Manville expressly warranted the roof system installed at Pier View in its July 29, 2008 Peak Advantage Guarantee (the "Warranty"). (A copy of the Warranty is attached as Exhibit B).

16. The Warranty was drafted by Defendant Johns Manville.

17. The Warranty erroneously listed the building owner as "125 Pier view [sic] LP," but correctly lists the building name as "Pier View Condos," located at 125 Pier View Street, Charleston, South Carolina, 29492.

18. At the time of the Warranty's issuance on July 29, 2008, the "Building Owner" was the Association.

19. Defendant Johns Manville wrongfully suspended the Warranty on July 9, 2013 "due to ownership change."

20. This suspension occurred without notice to the Association.

21. Despite receiving a $1,000 transfer fee from the Association, Defendant Johns Manville wrongfully cancelled the Warranty on May 5, 2016, citing as its reasoning "Transfer incomplete."

22. Defendant Johns Manville's "Guarantee Transfer Application Procedures" state that it will only transfer a guarantee request received within thirty (30) days from the building Date of Sale, and further that "upon the sale of the building to any new Building Owner, JM's obligations, if any, under the JM Guarantee become null and void."

23. Because the Building was never sold, the owner of the Building was the same on the date of the Warranty's issuance as it is today.

3

*The Defective Roof System*

24. At the time the Certificates of Occupancy were issued for Pier View in 2008, Pier Views' roofs contained latent building defects such that it would not have passed without objection in the trade at that time.

25. Defendant's supply, inspection, and warranting of the roof system with actual or constructive knowledge of the defects, and/or with negligent or reckless disregard of the presence of defects, constituted breach of their express warranties, and makes limitations on its express warranties unconscionable in all respects, and therefore void *ab initio*. The Warranty guarantees Pier View's roofs for a twenty (20) year period; it further warrants against workmanship deficiencies in the application of the roof system.

26. The Warranty purports to warrant the roof for a twenty (20) year period and includes the following limitations and exclusions (hereinafter the "Limitations"):

(a) The Warranty purports to limit Defendant's responsibility for repair under the Warranty to deficiencies in the "Roofing System," which is erroneously defined and omits integral, Johns Manville-manufactured components of the Roofing System;

(b) The Warranty purports to exclude Defendant's responsibility for installation or material failures of components other than those expressly defined in the Warranty as composing the "Roofing System;" however, Defendant mandated the use of its accessories (i.e., fasteners), and then attempted to limit its responsibility for the material failure and/or deficient installation of those accessories;

(c) The Warranty purports to limit Defendant's responsibility by providing a remedy of repair solely at its option;

(d) The Warranty purports to exclude any liability for incidental or consequential damages to the building's structure;

(e) The Warranty purports to disclaim all liability for damages which are based in claims of negligence, breach of warranty, strict liability or any other theory of liability;

(f) The Warranty purports to allow Defendant to deny claims based upon

4

        conditions Defendant should have observed, documented, and corrected prior to the issuance of the Warranty, and further permits Defendant to deny claims based upon conditions Defendant specifically approved relating to the Building's substrate; and

    (g)    Such other unfair and unconscionable limitations to be shown at trial.

27. Defendant performed numerous pre-warranty inspections; current engineering evidences that the pre-warranty inspections were defectively performed or the results concealed from Plaintiff.

28. Plaintiff, among others, previously put Defendant on notice of some or many of the manifestations of the roofing deficiencies. However, Defendant has denied the existence of or responsibility for the deficiencies and/or or their attempts at repair have failed.

29. In the ensuing years since installation of the roof system was complete in 2008, Defendant has repeatedly been on site at Pier View for inspections and/or repairs of the roof and should have seen the defects with the roof system before Plaintiff's experts were hired to assess the situation.

30. Moreover, during contact with Plaintiff before, during, and after being on site for inspections and/or repairs of the roof system, Defendant either failed to observe defects which should have been evident to them with their specialized knowledge or concealed their knowledge of the latent defects in the roof system.

31. The latent roofing defects in combination with fortuitous, weather, repeated water intrusion, and/or other events have resulted in consequential damage to non-defective building components and other property.

32. An engineering inspection of Pier View's roofs evidences failure of one or more components of the roof system; water intrusion into and through the roof; and resulting consequential damage to non-defective building components, and other property.

33. Defendant had a duty to design, manufacture, develop, construct, inspect, and repair the roof in a workmanlike manner with suitable materials and free from all defects.

34. The aforementioned deficiencies and consequential damages evidence that Defendant breached its duties to Plaintiff.

35. The Defendant's acts and omissions have resulted in roofing deficiencies, consequential damages, and partial loss of use and enjoyment.

36. Remedying the above-wrongs will result in additional consequential damages and loss of use.

37. As a direct and proximate result of Defendant's violation of its legal duties, Plaintiff has been proximately damaged in an amount to be determined by the trier of fact, and have had to incur reasonable attorneys' fees and costs for the retention of experts to determine the damage and the scope of work for repair.

38. Upon information and belief, the water intrusion and resulting consequential damages have occurred and have been occurring since shortly after the completion of construction and constitute "occurrences" and "property damage" under the standard and/or typical general liability policies.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

39. Defendant is estopped from relying on any statutes of limitation or repose by virtue of its acts. Upon information and belief, Defendant was in a position of superior knowledge and should have known Pier View was defectively constructed and failed to alert the Plaintiff.

40. Defendant had a duty to inform Plaintiff of the defects described herein, which it should have known. Notwithstanding its duty, Defendant never disclosed the defects to Plaintiff.

41. Despite exercising reasonable diligence, Plaintiff could not have discovered the

defective condition of the roof at Pier View.

42.     Given Defendant's failure to disclose this non-public information about the defective nature of roof at Pier View – Information over which it had exclusive control – and because Plaintiff could not reasonably have known of Pier View's defective nature, Defendant is estopped from relying on any statutes of limitations or repose that might otherwise be applicable to the claims asserted herein.

43.     Defendant is further estopped from relying upon any condition or limitation in the Warranty as they were supposed to inspect the roof prior to issuing the Warranty.

44.     Defendant is further estopped from relying on any statutes of limitation or repose as it contractually extended its guarantee of the roof system by virtue of the Warranty.

**ESTOPPEL FROM PLEADING WARRANTY LIMITATIONS AND DISCLAIMERS**

45.     Defendant is also estopped from relying on any warranty limitation or disclaimer as a defense to Plaintiff's claims.

46.     By virtue of Defendant's acts, the roof system installed at Pier View has not lived up to Defendant's warranties and representations.

47.     Defendant knew or should have known that the roof system installed at Pier View was defective and not fit for its ordinary and intended use, was not merchantable, and failed to perform in accordance with the warranties disseminated, or with the reasonable expectations of ordinary consumers such as Plaintiff.

48.     Accordingly, the Warranty fails its essential purpose because its purports to warrant that the roof will be free from defects for a prescribed period of time when, in fact, the roof has fallen far short of the applicable warranty period.

49.     Moreover, Defendant's warranties are woefully inadequate to repair and replace the failing roof, let alone reimburse for any damage suffered to the underlying structure due to the

inadequate protection provided by the roof. The remedies available under Defendant's warranties are limited to such an extent that they do not provide a minimum adequate remedy.

50. Moreover, given the comparative posture, resources, sophistication, and knowledge of the parties, the warranty limitations are procedurally unconscionable; and given Defendant's knew or should have known that the defects existed at the time they issued the warranty, the limitations are substantively unconscionable.

51. Further, Plaintiff did not negotiate or bargain for the terms of the express warranty provisions and any purported limitations contained in the Warranty. Instead, Defendant stood in a position of domination and control over the terms.

52. As a result, any limitations or disclaimers that restrict the remedies encompassed within Defendant's warranties are unconscionable and unenforceable, and therefore, Defendant is estopped from relying on the same. Further, the Defendant should be barred as a matter of law and equity from relying on any such provisions.

## FOR A FIRST CAUSE OF ACTION
**(Reformation of Contract)**

53. Plaintiff repeats and re-alleges the allegations contained in the above paragraphs as if fully set forth herein.

54. The Warranty at issue in this action operates as a contract between Defendant and the "Building Owner."

55. The Warranty lists the "Building Owner" as being "125 Pier View LP."

56. At the time of the Warranty's issuance, the Building Owner was not 125 Pier View, L.P.; rather, the Building Owner was the Association.

57. The proper identification of the Building Owner is a material element of the contract and the enforcement of the terms contained therein.

58. Upon information and belief, the above-described mistake in identifying the correct Building Owner was mutual.

59. Upon information and belief, both parties intended the Warranty to be for the benefit of the actual Building Owner, and the erroneous listing of 125 Pier View, L.P. as the Building Owner did not obtain this intent.

60. Further, the Warranty erroneously lists the "Roofing System" as including "Fesco Fesco" insulation.

61. Upon information and belief, the Johns Manville insulation specified by, and subsequently inspected by, Johns Manville on the roof at Pier View is not Johns Manville Fesco Fesco insulation and, rather, is actually Johns Manville 1/2 inch Retro-Fit Insulation Board.

62. The proper identification of the components of the Roofing System is a material element of the contract and the enforcement of the terms contained therein.

63. Upon information and belief, the above-described mistake in identifying the correct type of insulation used on the roof was mutual.

64. Upon information and belief, both parties intended the Roofing System warranted by Johns Manville to be correctly defined in the Warranty, and the erroneous listing of the insulation type did not obtain this intent.

65. Plaintiff is entitled to a reformation of the Warranty to reflect their ownership interest at the time the Warranty was issued and to accurately reflect the components used in the Roofing System.

## FOR A SECOND CAUSE OF ACTION
### (Negligence/Gross Negligence)

66.    Plaintiff repeats and re-alleges the allegations contained in the above paragraphs as if fully set forth herein.

67.    At all times relevant hereto, Defendant, its agents, servants, employees, and subcontractors undertook and had a duty to Plaintiff to exercise and use due care in the construction, inspection and repair of Pier View in a good, workmanlike manner and with suitable materials, in accordance with the applicable building codes, state law, and in conformance with the prevailing industry standards.

68.    Defendant breached its duties to Plaintiff in a manner that was negligent, careless, reckless, willful, and wanton in the following particulars:

    (a)    In failing to properly test the roofing system installed at Pier View in accordance with its duty to do so;

    (b)    In failing to manufacture and supply its products with due care;

    (c)    In failing to manufacture and supply its products with adequate instructions;

    (d)    In failing to manufacture and supply a roofing system that complies with the applicable building code;

    (e)    In failing to properly supervise the work and construction of Pier View;

    (f)    In failing to ensure that the roof substrate was properly constructed and ready to receive the roofing materials;

    (g)    In failing to properly inspect the completed roof for workmanship and weathertight details;

    (h)    In failing to notice the roofing deficiencies during inspections;

    (i)    In failing to make adequate repairs;

    (j)    In failing to act as a reasonable person would in the circumstances then and there prevailing;

      (k)    In covering up their own defective work and/or the defective work of others; and,

      (l)    Such other failures to be proven at trial.

69.    Plaintiff has been damaged as a direct and proximate result of the negligence, carelessness, recklessness, willfulness, and wantonness of Defendant.

70.    If it is shown that said failures were committed with gross negligence and/or reckless disregard for the rights of others, and/or constituted negligence per se, Plaintiff is entitled to an award of punitive damages against Defendant.

## FOR A THIRD CAUSE OF ACTION
### (Breach of Express Warranty)

71.    Plaintiff repeats and re-alleges the allegations contained in the above paragraphs as if fully set forth herein.

72.    Defendant represented to Plaintiff's predecessors that the roof would be a twenty year roof and that it would be of suitable materials and workmanlike construction and that it would perform its intended purposes. These representations and the warranties described further above constitute express warranties.

73.    The roof system installed at Pier View is prematurely failing and is not code-compliant.

74.    These failures constitute a breach of Defendant's express warranties.

75.    These failures also constitute a breach of the Warranty, which warrants the roof system for a twenty year period.

76.    Defendant has been put on notice of deficiencies in the roof.

77.    Defendant has failed to timely repair or replace the roof and/or the repairs have been inadequate and have again failed; thus, the warranty has failed of its essential purpose rendering the limitations in the Warranty invalid.

78. Moreover, the limitations in the Warranty are unconscionable and unenforceable because:

(a) The Limitations as to the type and amount of damages and the type of remedies frustrate the purpose of the roof and/or were made when Defendant knew or should have known that there were latent defects in the roof system installed at Pier View;

(b) The Warranty sets forth numerous conditions, e.g., construction conditions, that would nullify the warranty even though Defendant either created those conditions and/or Defendant inspected and accepted those conditions prior to issuing the Warranty;

(c) The Limitations are so harsh, oppressive, one-sided, and inconspicuous that no reasonable person would ever knowingly agree to its terms if the latent defects of the roof system were properly disclosed;

(d) The Limitations effectively prevent any reasonable remedy in spite of the roof system having latent defects, thereby preventing Plaintiff from receiving the benefit of their bargain, i.e., a merchantable roof; and

(e) The Warranty is not provided to purchasers of the roof before or at the time of the purchase; purchasers only learn of the purported Limitations on their twenty year roof at the time of delivery or installation of the roof system.

79. Defendant has breached their express warranties by designing, constructing, inspecting, and/or repairing Pier View in a defective, non-code compliant manner as set forth above.

80. As a direct and proximate result of Defendant's breach of their express warranties, Plaintiff has suffered actual and consequential damages.

### FOR A FOURTH CAUSE OF ACTION
**(Breach of Implied Warranty)**

81. Plaintiff repeats and re-alleges the allegations contained in the above paragraphs as if fully set forth herein.

82. The design, construction, inspection, and/or repair of Pier View, and the components used therein, came with implied warranties of fitness, merchantability, and workmanship.

83. Defendant has breached its implied warranties by designing, constructing, inspecting, and/or repairing Pier View in a defective manner as set forth above, and by failing to repair Pier View as set forth above.

84. As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiff has suffered actual and consequential damages.

## FOR A FIFTH CAUSE OF ACTION
**(Strict Liability in Tort: *S.C. Code Ann*. § 15-73-10 *et seq*.)**

85. Plaintiff repeats and re-alleges the allegations contained in the above paragraphs as if more fully set forth herein.

86. Defendant manufactured and supplied the roof system, including the insulation, base sheet, cap sheet, fasteners, base flashing, EPDM membrane, EPDM bonding cement, EPDM seam tape, and all related installation instructions, installed during the construction of Pier View.

87. In manufacturing and/or supplying products for the construction of Pier View, the Defendant placed products into the stream of commerce.

88. By introducing its products into the stream of commerce, the Defendant represented said products were safe and suitable for their foreseeable use.

89. In the manufacture and/or supply of products to Pier View, the Defendant anticipates and expects that its products will reach the public in substantially the same condition in which they were designed, developed, constructed, and sold.

90. The Defendant has manufactured and/or sold products in a defective manner which has resulted in repeated water intrusion into and damage to Pier View and other building deficiencies.

91. Plaintiff could not have discovered the product defects through the exercise of reasonable care.

92. The cost of altering the design, construction, and/or repair of the products supplied to Pier View was substantially less than the resulting damage, cost, and injury suffered by the Plaintiff.

93. The design and manufacture of the products supplied to Pier View was inherently defective as sold was a direct and proximate cause of the damages suffered by Plaintiff.

94. The Defendant is therefore liable to Plaintiff under the doctrine of strict liability in an amount to be determined by the trier of fact.

## FOR A SIXTH CAUSE OF ACTION
**(Breach of Contract)**

95. Plaintiff repeats and re-alleges the allegations contained in the above paragraphs as if fully set forth herein.

96. The foregoing constitutes a breach of contract, either directly or by virtue of Plaintiff's status as a third party beneficiary.

97. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered actual and consequential damages.

WHEREFORE, Plaintiff prays for reformation of the written Warranty to reflect the true intent of the parties; demand a trial by jury; actual and consequential damages; statutory or punitive damages; reasonable attorneys' fees; costs of suit; and prejudgment interest; and granting such further relief as the Court deems just and proper.

Respectfully submitted,

               JUSTIN O'TOOLE LUCEY, P.A.

           By: <u>  s/ Justin Lucey            </u>
               Justin Lucey
               Dabny Lynn
               Anna McCann
               Taylor Morris
               415 Mill Street
               Post Office Box 806
               Mount Pleasant, SC 29465-0806
               (843) 849-8400 phone
               (843) 849-8406 fax

<u>April 4, 2018</u>
Charleston, South Carolina

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| PIER VIEW CONDOMINIUM ASSOCIATION, INC., )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>Johns Manville, Inc., )<br>Defendant. )<br>_____ ) | Civil Action No.: 2:18-cv-22-RMG<br><br><br><br>**CERTIFICATE OF SERVICE** |

    I, Justin Lucey, hereby certify that on April 4, 2018, I sent via email, a copy of the foregoing **AMENDED COMPLAINT** to all Counsel of Record who have hereto advised the District Court of their appearance in this matter.

                                          Respectfully submitted,

                                          s/ Justin Lucey

                                          Justin Lucey, Esquire (Fed. ID # 5613)
                                          jlucey@lucey-law.com
                                          Dabny Lynn, Esquire (Fed. ID # 11411)
                                          dlynn@lucey-law.com
                                          Anna S. McCann, Esquire (Fed. ID #12489)
                                          amccann@lucey-law.com
                                          Justin O'Toole Lucey, P.A.
                                          415 Mill Street (29464)
                                          P.O. Box 806
                                          Mt. Pleasant, SC 29465
                                          ***Attorneys for Plaintiff***

April 4, 2018
Charleston, South Carolina