UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Pier View Condominium Association, Inc., ) <br> ) <br>          Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Johns Manville, Inc., ) <br> ) <br>          Defendant. ) <br> _____ ) | Civil Action No. 2:18-0022-BHH <br><br> **Opinion and Order** |

This matter is before the Court on Plaintiff Pier View Condominium Association, Inc.'s ("Pier View") motion for partial summary judgment on its negligence and breach of implied warranty claims (ECF No. 50), and Defendant Johns Manville, Inc.'s ("Johns Manville") motion for summary judgment (ECF No. 51), motion to exclude expert testimony (ECF No. 52), and motion to compel the production of settlement information and documents (ECF No. 53). For the reasons set forth in this Order, Johns Manville's motion for summary judgment is granted in part and denied in part, Pier View's motion for partial summary judgment is denied, the motion to exclude expert testimony is denied without prejudice, and the motion to compel production of settlement information and documents is granted *to the extent in camera review is requested*.

## BACKGROUND

Pier View brought this action against Johns Manville asserting causes of action for reformation of contract, negligence/gross negligence, breach of express warranty, breach of implied warranty, strict liability in tort pursuant to S.C. Code § 15-73-10, *et seq.*, and breach of contract. (Am. Compl., ECF No. 14.) Pier View alleges that Johns Manville

1

specified, designed, manufactured, supplied, inspected, and warranted an untested, illegal, defective, and leaking roof system ("Roof System") for use in the hurricane-prone coastal region of South Carolina. In doing so, Pier View avers, Johns Manville breached duties of care owed to the homeowners at Pier View, which breaches constitute gross negligence and rendered the Roof System unmerchantable, in that it was not fit for its intended purpose.

Pier View is a condominium complex consisting of three, four-story buildings featuring 136 condominium style homes located at 125, 135, and 145 Pier View Street, Charleston, South Carolina. It was constructed by general contractor Trammell Crow Residential ("TCR") from approximately 2005 to 2008. Johns Manville is an internationally known manufacturer and seller of various products, including commercial roofing systems. Johns Manville, along with its Peak Advantage roofing contractor, submitted a 2-ply, insulated SBS[1] system consisting of various Johns Manville products and fasteners. The Roof System's attachment to the wood deck is dependent upon mechanical fasteners used to secure the insulation. During the submittal process or shortly thereafter, TCR contacted Johns Manville for assistance with the design of the roof to be installed at Pier View. Of concern was that the roof decking at Pier View was 7/16" oriented-strand board ("OSB"), as opposed to 1/2" plywood, and used ply-clips instead of wood blocking, whereas Johns Manville's installation requirements mandate a minimum of 1/2" decking and the use of wood blocking.

Johns Manville's contractor services manager proposed that a modified system involving retrofit insulation board and an increased fastener pattern be applied in order to

---

[1] "SBS", which stands for styrene butadiene styrene, is a type of modified bitumen roofing.

bring the Roof System into compliance and receive Johns Manville's 20-year, no dollar limit warranty called the Peak Advantage Guarantee ("Guarantee"). Pier View alleges that Johns Manville's local technician failed to ensure that the increased fastener patterns were accomplished, despite being informed of their necessity, and despite conducting ten (10) site inspections on the Pier View roof during construction. Pier View contends that the local technician approved the Roof System for warranty on July 28, 2008 and the Guarantee was issued to the Developer, 125 Pier View LP, on July 29, 2008, even though the modified system proposed by Johns Manville had not been followed.

A prior state-court class action was filed by Pier View and all condominium homeowners on January 19, 2016, as a result of various alleged construction deficiencies, including a sewage back-up in the garages and a fire in Building 145. Pier View asserts that during the state-court action, engineers hired to evaluate the buildings discovered via destructive testing that the density of roof fasteners used to attach the Roof System were inadequate to withstand the code-prescribed design wind load at Pier View. Concomitantly with this investigation, Johns Manville cancelled the Guarantee on May 5, 2016 for failure to timely transfer the Guarantee from the Developer to the Pier View Condominium Association. After unsuccessful attempts to resolve the Guarantee cancellation, and several alleged roof leaks, Pier View filed this action against Johns Manville on October 23, 2017.

Pier View filed a motion for partial summary judgment on February 7, 2020, contending that no genuine dispute remains as to any material fact on the issues of liability for negligence and breach of implied warranty. (ECF No. 50.) Johns Manville filed a motion for summary judgment on the same day seeking dismissal, on various grounds,

3

of all Pier View's claims. (ECF No. 51.) Johns Manville also filed a motion to exclude expert testimony (ECF No. 52) and a motion to compel the production of settlement information and documents (ECF No. 53). All motions have been fully briefed and are ripe for disposition. The Court has thoroughly reviewed the parties' briefs and relevant portions of the record, and now issues the following ruling.

## **LEGAL STANDARD**

The Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An

4

issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the Court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a summary judgment motion. *Anderson*, 477 U.S. at 252. "Genuineness" of the disputed issue(s) "means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## **DISCUSSION**

### A. Statute of Repose

South Carolina Code § 15-3-640 ("statute of repose") provides, "No actions to recover damages based upon or arising out of the defective or unsafe condition of an improvement to real property may be brought more than eight years after substantial completion of the improvement." Unlike a statute of limitations, a statute of repose is not subject to assertions of waiver, tolling, or estoppel. *G & P Trucking v. Parks Auto Sales Svc. & Salvage, Inc.*, 591 S.E.2d 42, 45 (S.C. Ct. App. 2003). South Carolina's statute of repose further provides that a certificate of occupancy "shall constitute proof of substantial completion" unless the parties agree in writing on a different date. S.C. Code § 15-3-640.

5

The City of Charleston issued certificates of occupancy for the three buildings at Pier View by April 1, 2008. (ECF No. 51-9.) Pier View filed this action against Johns Manville on October 23, 2017, approximately nine and a half years after construction of the buildings was substantially completed. Thus, unless an exception applies, Pier View's claims are barred by the statute of repose.

The statute provides that parties may contractually agree to express warranties beyond the eight-year statute of repose. S.C. Code § 15-3-640. Accordingly, a breach of express warranty claim remains actionable for the duration of the warranty. Moreover, the statute of repose is "not available as a defense to a person guilty of fraud, gross negligence, or recklessness . . . or to a person who conceals any such cause of action." S.C. Code § 15-3-670(A).

Pier View argues that the statute of repose does not bar its claims because Johns Manville issued a 20-year Guarantee on the Roof System. (ECF No. 57 at 13–14.) The statute states, in pertinent part: "Nothing in this section prohibits a person from entering into a contractual agreement prior to the substantial completion of the improvement which extends any guarantee of a structure or component being free from defective or unsafe conditions beyond eight years after substantial completion of the improvement or component." S.C. Code § 15-3-640. Johns Manville concedes, in its memorandum, that the breach of express warranty claim would be excepted from application of the statute of repose if Pier View were able to show a genuine issue of material fact related to that claim. (*See* ECF No. 51-1 at 22.) As more fully explained below, the Court finds that a genuine issue remains as to the express warranty claim.

Pier View further contends that there is ample evidence from which a jury could

6

find Johns Manville was grossly negligent. Johns Manville also concedes that if Pier View demonstrates an issue of fact related to the gross negligence claim, the statute of repose would not operate to bar that claim. (*See id.*) As discussed below, the gross negligence claim will proceed because genuine issues of fact remain.

However, beyond the breach of express warranty claim and the gross negligence claim, Pier View has not shown why its remaining claims are not subject to dismissal based on the plain language of the statute of repose. *See, e.g.*, *Hampton Hall, LLC v. Chapman Coyle Chapman & Assocs. Architects AIA, Inc.*, No. CV 9:17-1575-RMG, 2017 WL 6622508 (D.S.C. Dec. 27, 2017) (granting summary judgment on claims for breach of contract, negligence, and breach of express and implied warranties, but allowing gross negligence claim to proceed, where plaintiff alleged failure of the truss members in a community clubhouse mezzanine roof over an activity room with a vaulted ceiling and skylight), *amended on other grounds*, No. CV 9:17-1575-RMG, 2018 WL 679454 (D.S.C. Feb. 2, 2018). Accordingly, the Court grants summary judgment in Johns Manville's favor and dismisses all of Pier View's claims except the breach of express warranty and gross negligence claims. In addition, because Pier View's motion for partial summary judgment specifically seeks a ruling on the negligence and breach of implied warranty claims, the motion is denied.

### B. Breach of Express Warranty

Johns Manville argues that Pier View's breach of express warranty claim is barred by South Carolina's three-year statute of limitations because Pier View knew or should have known no later than 2013 of the roof defects alleged in its 2017 lawsuit, yet intentionally delayed transferring the Guarantee, delayed asserting claims under the

7

Guarantee, and delayed pursuing any claims against Johns Manville because it wanted to keep pressure on the Developer to handle mounting problems with the Roof System. (ECF No. 51-1 at 14–17.) Johns Manville further argues that Pier View cannot satisfy the required elements of its breach of express warranty claim because Pier View cannot assert rights under the Guarantee without first having the Guarantee transferred, but no transfer ever occurred. (ECF No. 51-1 at 25–29.) A brief review of the history of the Guarantee is necessary to resolve these arguments.

Johns Manville performed its final inspection of the Roof System on July 28, 2008 and indicated the system was "Approved." (ECF No. 50-11.) On July 29, 2008, Johns Manville issued its Peak Advantage Guarantee to the "Building Owner," itemized as "125 Pier view [sic] LP." (*Id.* at 16.) The Guarantee lists the "Building Name" as "Pier View Condos." (*Id.*) Thus, from the beginning of the relevant time period the Guarantee was owned by the Developer, 125 Pier View LP.

In May 2013, the Pier View Condominiums experienced leaks at the scuppers (roof drains) where water was ponding. (ECF No. 57-4.) Over the next several months, Johns Manville was notified, inspections were conducted, required repairs were itemized, and an approved roofer ("Glasgow") was hired to perform the requested work. (*See* ECF Nos. 57-5, 57-6, 57-8, 57-9.) Johns Manville conducted a post-repair inspection of the Roof System and stated in a November 22, 2013 "Site Visit Report": "Per your request Johns Manville (JM) conducted a roof inspection on the above referenced property for transfer of the JM guarantee. No deficiencies with the roof system were noted." (ECF No. 57-10 at 2.) In May 2015, the Developer hired another approved roofer ("Spann") to perform work on mechanical components of the Roof System and paid that roofer for completion

8

of the repairs. (ECF No. 57-11.)

On July 1, 2015, the President of the Pier View Condominium Association reinitiated an email communication thread begun with Johns Manville in July 2013, to inquire about transferring the Guarantee from the Developer to Pier View. (*See* ECF No. 57-12.) Pier View returned the Guarantee transfer packet to Johns Manville with a check for the $1,000 fee, which check Johns Manville subsequently deposited. (*See* ECF No. 57-13.) After conducting an inspection, Johns Manville issued a "Site Visit Report – Transfer Inspection with Punch List" on August 13, 2015, listing a number of "deficiencies with the roof system that will need to be corrected prior the completion of the transfer process." (ECF No 57-14 at 5.) The August 13, 2015 Site Visit Report further stated, "Please have these issues corrected by a JM Approved Repair Contractor within sixty (60) days and send a signed copy of this report and proof of such repairs to our JM Account Manager," and warned, "If no correspondence is received within 60 days from the date of this letter, the guarantee will be moved from 'Suspended' status to 'Inactive.'" (*Id.* at 6.) On August 20, 2015, the Johns Manville account manager sent the Pier View Association President, Mr. Bill Hart, an email stating, "Hello Bill, Please see punchlist [sic] of repairs needed to finalize transfer." (ECF No. 57-15 at 1.) On August 31, 2015, Pier View hired Spann to complete the required repairs on a time and materials basis not to exceed $4,500. (ECF No. 57-16.) On October 2, 2015, a representative of Spann emailed the Johns Manville account manager referencing the Guarantee and stating:

> Dear Joseph,
> Spann Roofing & Sheet Metal, Inc., Conway, SC will be completing the repair punch list for the above mentioned project. Upon completion we have also been retained to perform twice yearly maintenance on the roofs. Because of the inclement weather, we have not been able to make the needed repairs. We have the work scheduled for next week (October 5–9),

9

> weather permitting. Upon completion, we will submit the form provided stating the completion of the work.

(ECF No. 57-17.) The account manager responded simply, "Thanks Jim!" (*Id.*) From October 1 to October 5, 2015, portions of South Carolina experienced historic rainfall and flooding from weather associated with Hurricane Joaquin; South Carolina State Officials estimated damage losses at $1.492 billion. (ECF No. 57-18.) Span ultimately performed the repairs at Pier View Condominiums on January 18, 2016. (*See* ECF No. 57-20 at 1.)

On May 5, 2016, Johns Manville informed Pier View that the Guarantee was cancelled because the itemized repairs were not made within the allotted 60-day timeframe. (ECF No. 57-19 at 2.) In his declaration, Jim Rose of Spann Roofing stated:

> 6. Johns Manville required the repairs to be repaired within sixty (60) days.
> 7. Unfortunately, severe weather prohibited Spann from finishing the repairs within the sixty (60) day period.
> 8. I contacted Johns Manville, explained the problem and received an extension to make repairs.
> 9. The repairs were made and the paperwork stating the repairs were made was submitted.
> 10. It was not until later that we found that Johns Manville did not have the required paperwork and that the warranty would be canceled.
> 11. We immediately sent the paperwork back to Johns Manville and explained that we did send in the paperwork.
> 12. I was informed that the warranty would be reinstated.

(Rose Decl. ¶¶ 6–12, ECF No. 57-1.)

The Court finds that a genuine issue of material fact remains as to whether the Guarantee was transferred from the Developer to Pier View in 2016. Johns Manville disputes that the transfer occurred, but Pier View has presented sufficient evidence from which a reasonable juror could conclude that Pier View complied with the necessary procedures to effect the transfer under the circumstances. Moreover, there is evidence to suggest that Johns Manville gave indication that the Guarantee was transferable in the

fall of 2015, and that the Guarantee would be "reinstated" after it became clear the necessary repairs, delayed by historic inclement weather, had been completed in early 2016. Johns Manville is right to argue that Pier View cannot claim rights under the Guarantee without first having the Guarantee transferred, but because there is a genuine question as to whether such a transfer occurred in 2016, Johns Manville's argument that the breach of express warranty claim is barred by the statute of limitations fails. If Pier View successfully demonstrates at trial that the Guarantee was transferred in 2016, then its October 2017 express warranty claim against Johns Manville is timely. Accordingly, the motion for summary judgment on the breach of express warranty claim is denied.

### C. Gross Negligence

Johns Manville argues that the three-year statute of limitations bars Pier View's gross negligence claim because, pursuant to the discovery rule, Pier View knew or should have known that a claim against Johns Manville might exist no later than November 13, 2013. (ECF No. 51-1 at 14–17.) Johns Manville asserts, "The Association's correspondence, including two prior professional roofing evaluations, references efforts to repair issues with the roof, acknowledges possible claims against Johns Manville, and includes the express threat of legal action." (*Id.* at 15.) Additionally, Johns Manville argues that Pier View cannot satisfy the required elements of its gross negligence claim because the claim is premised on an alleged failure to notice deficiencies in the Roof System during inspections and to warn Pier View of those deficiencies, but Johns Manville had no duty to conduct its roof inspections for Pier View's benefit or to warn of alleged defects. (*Id.* at 24.) Johns Manville contends that all its inspections of the Roof System were performed pursuant to the Guarantee or in connection with Pier View's Guarantee transfer request,

11

and the Guarantee provides:

> Because JM does not practice Engineering or Architecture, neither the issuance of this Guarantee nor any review of the Building's construction or inspection of roof plans (or the Building's roof deck) by JM representatives shall constitute any warranty by JM of such plans, specifications, and construction or in any way constitute an extension of the terms and conditions of this Guarantee. Any roof inspections are solely for the benefit of JM.

(ECF No. 14-2 at 1.)

With respect to the issue of *when* Pier View had notice that it might have a claim against Johns Manville, Johns Manville points to a November 13, 2013 letter written by the Pier View Condominium Association to the Developer (Trammel Crow Residential[2]). (ECF No. 51-2.) In the letter, the Association states:

> We, the Board of Directors of the Pier View Homeowners Association (PVHOA) are writing this letter with the expectation that the issues contained herein, will be satisfactorily addressed by Trammel Crow Residential (TCR).
>
> Your letter to the Board dated October 30, 2013 was encouraging. You stated unequivocally that TCR had agreed to complete the repairs to 145 units 401, 412, and 416. You further stated that unit 401 was being reviewed by Caliber for resolution. To date, none have heard about their pending repairs.
>
> Regarding the two major issues that concern us the most, the roof and the garage water intrusion, you *defer to Johns Manville* and the sub-contractor responsible for waterproofing the complex *for the delay in taking action*. We are becoming convinced that TCR has no intention of correcting our issues.
>
> As such, we are proposing a resolution to alleviate our and the owners concerns. We request that TCR develop a Memorandum of Agreement (MOA) consisting of a work plan and schedule that will detail both the starting and ending dates to correct the following items:
>   1) the roofs of 125, 135, and 145; a complete report from Johns Manville outlining the work performed and the re-instatement of the

---

[2] For clarification, 125 Pier View LP was the entity that recorded the Master Deed creating the Pier View Horizontal Property Regime (ECF No. 51-3) and Trammel Crow Residential ("TCR") was the general contractor operating 125 Pier View LP. 125 Pier View LP and TCR are referred to interchangeably as the "Developer" throughout the filings.

12

> 20-year warranty
> 2) the water intrusion problems in the garages and the apparent lack of flashing that is more widespread than just where there is evidence of water
> 3) the items in the ABS/Lott&Barber engineering reports (see attached) that we have identified as construction issues
> 4) all of the owner issues that are related to defects in construction
>
> We request that TCR send this MOA to us no later than Friday, December 13, 2013. We will discuss the MOA with the owners at our quarterly board meeting on December 18, 2013. Failure to satisfactorily complete this request will result in *legal action brought against TCR*.
>
> We are aware of the Statute of Repose and we will not allow any more time to lapse, effectively limiting our ability to remedy these issues.

(*Id.* (emphasis added).) In a responsive email on November 15, 2013, the Developer stated:

> [W]e have confirmed with Glasgow that Vanessa with Johns Manville has completed her roof inspection. The inspection produced a short punchlist [sic] of items, which Glasgow subsequently went back out and took care of. These were small items, most were really maintenance items that are HOA responsibility and unrelated to the repair work that we had Glasgow do, but nevertheless we had Glasgow take care of all of them. Vanessa indicated to Glasgow that the punchlist [sic] could be resolved with "before and after" photos, which Glasgow has sent to Vanessa. Glasgow has let Vanessa know that the HOA needs a letter confirming the warranty is intact. We are awaiting that letter and will forward it upon receipt.

(ECF No. 57-33.)

Viewed in the light most favorable to Pier View, the Association's November 13, 2013 correspondence—identified by Johns Manville as putative evidence that Pier View had notice of a potential claim—addressed only isolated roofing issues that were being contemporaneously repaired by an approved roofer and inspected by Johns Manville. Pier View's 30(b)(6) witness, Mr. Hart, confirmed this in his deposition, testifying that the roof repair issues in 2013 and 2014 were isolated to the scuppers and the gravity vents, both of which were repaired and inspected to the satisfaction of Johns Manville. (*See* Hart

13

Dep. 132:2–11, 168:2–19; 213:9–215:4, ECF No. 57-24 (discussing the scope of the 2013 and 2014 repairs).) Contrary to Johns Manville's characterization, the correspondence does not acknowledge possible claims against Johns Manville or include the express threat of legal action *against Johns Manville*. (*See* ECF No. 51-2.) Read from Pier View's perspective, the correspondence demonstrates the Association's frustration with (a) the Developer's failure to make limited repairs in a timely fashion, and (b) the Developer's tendency to blame Johns Manville and others for the delay. Thus, Johns Manville has failed to show that Pier View knew or should have known in 2013 about its subsequent claims against Johns Manville, which are *far broader* in scope and not tailored to specific repairs, and the statute of limitations does not bar Pier View's gross negligence claim.

"Gross negligence is defined as the 'failure to exercise slight care,' or 'the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do.'" *Toney v. LaSalle Bank Nat. Ass'n*, 896 F. Supp. 2d 455, 479–80 (D.S.C. 2012) (quoting *Steinke v. South Carolina Dep't of Labor, Licensing and Regulation*, 520 S.E.2d 142, 153 (S.C. 1999)), *aff'd*, 512 Fed. Appx. 363 (4th Cir. 2013). "If a person of ordinary reason and prudence would have been conscious of the probability of resulting injury, the law says the person is reckless or willful and wanton, all of which have the same meaning—the conscious failure to exercise due care." *Berberich v. Jack*, 709 S.E.2d 607, 612 (S.C. 2011). "In most cases, gross negligence is a factually controlled concept whose determination best rests with the jury." *Faile v. S.C. Dep't of Juvenile Justice*, 566 S.E.2d 536, 545 (S.C. 2002). As explained above, S.C. Code § 15-3-670(A) states that the statute of repose is not available in the case of gross negligence. Section 15-3-670(B) further provides: "For the purposes of

subsection (A), the violation of a building code of a jurisdiction or political subdivision does not constitute per se fraud, gross negligence, or recklessness, but this type of violation may be admissible as evidence of fraud, negligence, gross negligence, or recklessness." S.C. Code § 15–3–670(B).

Pier View's gross negligence claim is founded on more than just an assertion that Johns Manville's inspections were inadequate. Rather, Pier View contends and has produced evidence to show that applicable sections of the International Building Code required testing of the Roof System for wind uplift performance, that Johns Manville failed to perform such testing, and that the Roof System was thus non-code compliant and unmerchantable in the first instance. (*See* ECF No. 50 at 6–14.) The evidence introduced by Pier View is sufficient to create a genuine question as to whether Johns Manville had a duty to conduct mandatory wind uplift testing of the Roof System as modified for installation at Pier View. In addition, given that Johns Manville's own contractor services manager was the source of the direction to include increased fastener patterns to accommodate proper wind uplift performance in light of the 7/16" OSB decking and ply-clips, and given that this requirement was specifically communicated to Johns Manville's local technician who inspected the installation and approved the Roof System for warranty, triable issues of fact remain as to whether agents of Johns Manville were grossly negligent in ways that were not reasonably discoverable by Pier View until a post hoc, in-depth inspection was triggered by subsequent events. Accordingly, the motion for summary judgment on the gross negligence claim is denied.

### D. Motion to Exclude Expert Testimony

In its motion to exclude expert testimony of Pier View's designated experts, Johns

Manville argues that the experts should be excluded because their opinions are unreliable. (*See* ECF No. 52-1.) Specifically, Pier View's liability expert, Eric Peterson, P.E. of WDP Associates, opined that the Roof System is "illegal" and must be replaced, and Pier View's repair estimator, John DeWitte of Cooper River Contracting, LLC, provided a price to replace the roof. Johns Manville contends:

> The fatal flaw to both opinions . . . is that neither expert identifies any replacement roof system that would be "legal," much less tested any replacement roof system to determine if the roof system would meet code requirements. Plaintiff's experts further fail to identify any industry standard or other standard to support their opinions regarding the "effectiveness" of the Johns Manville warranty or the cost of a roof replacement. Finally, Plaintiff's experts admit they made no effort to determine the cause of any particular leak at the Pier View Condominiums, leaving the experts unable to testify as to whether a leak into a unit was caused by water entering from the roof or some other component of the condominium that is not part of the Johns Manville roof system, such as the vents in the roof parapet walls.

(ECF No. 52-1 at 1–2.) The motion goes on to argue that Pier View's experts should not be permitted to base opinion testimony on flawed legal opinions that they are unqualified to provide (*id.* at 4–5), that the experts should be excluded because they do not provide an alternative design (*id.* at 5–6), and that the estimate for the roof replacement is unsubstantiated and contradicts Pier View's own theories of liability (*id.* at 7–9).

Under the Federal Rules of Evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "The primary locus of this obligation is Rule 702, which clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify." *Id.* Prior to allowing expert testimony to be presented at trial, the trial court must determine: (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to

determine a fact in issue;" (b) "the testimony is based on sufficient facts or data;" (c) "the testimony is the product of reliable principles and methods;" and (d) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert*, 509 U.S. at 592–93. The trial court's gatekeeping obligation under *Daubert* to ensure the relevance and reliability of expert testimony applies to non-scientific expert testimony as well as scientific expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

At the outset, the Court would note that it is not immediately clear whether Johns Manville's motion seeks to exclude Pier View's experts entirely or only to exclude those specific aspects of the expert reports with which the motion takes issue. (*See* ECF Nos. 52-1 & 63.) If the question is whether Mr. Peterson will be permitted to opine that the Roof System violates the International Building Code, the answer is "yes," so long as Pier View, at an appropriate time, lays the proper foundation for that opinion. If the question is whether Mr. Peterson will be permitted to use the word "illegal," as opposed to "untested" or "non-code compliant," to refer to the Roof System, the Court can understand Johns Manville's concern that the use of such a conclusory term could tend to invade the province of the fact finder by assuming resolution of the ultimate issue, and use of that specific term may indeed be precluded. Likewise, if the question is whether Mr. DeWitte may offer an opinion as to the estimated cost to replace the roof, such an opinion will be

17

permitted provided a proper foundation is laid and the opinion is grounded in relevant facts. As to whether Mr. DeWitte may testify to the specific dollar figure that he has calculated, without accounting for a discount related to periods of time in which Pier View enjoyed the incident-free use of the Roof System and similar considerations, it is too early for the Court to make a specific ruling on such a question. Ultimately, the touchstone of admissibility is whether the expert opinion in question will assist the factfinder, without misleading or confusing the issues, which in turn hinges on the reliability of the opinion. In truth, the dispute seems premature at this stage given that the Court has not been presented with a specific proffer of the testimony that Pier View seeks to introduce through its experts, and Johns Manville has not been precise about the specific portion(s) of their anticipated testimony that it deems objectionable. At this stage, it would seem that many of Johns Manville's objections to the experts' anticipated testimony are ripe fodder for cross examination and not cause to exclude their testimony entirely. For the time being the Court denies the motion to exclude expert testimony without prejudice. However, Johns Manville is free to reraise its objections at an appropriate time, such as through a motion in limine.

### E. Motion to Compel Settlement Information and Documents

In 2019, Johns Manville moved for and was denied its request to compel production of settlement information and documents from a related action in the Berkeley County Court of Common Pleas, *Pier View Condominium Association, Inc., et al. v. 125 Pier View, L.P., et al.*, No. 2016-CP-08-0109. (ECF Nos. 31 & 42.) At the time, the Court found that any alleged liability resolved by the settlement agreements in the related case is unique from the liability claimed in the instant lawsuit. (ECF No. 42 at 11–12.) This may

still be true. However, further consideration reveals a colorable basis to believe there may be material overlap between the liability alleged in the two cases. (*See, e.g.*, ECF No. 36-1 at 5–10 (expert report of Eric Peterson, P.E., detailing Johns Manville's involvement in the allegedly inadequate inspection and reporting of construction deficiencies, and alleged failure to properly train and inform roof installers at Pier View).)

The Court denied the previous motion to compel without prejudice, anticipating that the Court could determine the settlement agreements are relevant at a later date. (*See* ECF No. 42 at 12.) In light of the settlement agreements' potential relevance to the question of liability in this matter, and in light of the Court's strong desire to avoid the needless expenditure of judicial resources (if indeed Pier View *has* already achieved full recovery), the Court hereby grants the motion to compel the settlement information and documents *to the extent the motion asks for in camera review*. Pier View is directed to produce the requested information to the Court.

## **CONCLUSION**

After careful consideration of the parties' briefs and the relevant portions of the record, and for the reasons set forth above, Defendant Johns Manville, Inc.'s motion for summary judgment (ECF No. 51) is GRANTED in part and DENIED in part, motion to exclude expert testimony (ECF No. 52) is DENIED *without prejudice*, and motion to compel the production of settlement information and documents (ECF No. 53) is GRANTED *to the extent in camera review is requested*. Plaintiff Pier View Condominium Association, Inc. is hereby ordered to produce the requested information to the Court for *in camera* review within fourteen (14) days. Pier View's motion for partial summary judgment (ECF No. 50) is DENIED.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

February 17, 2021
Charleston, South Carolina